EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

THIS AGREEMENT is made by and between State Farm Mutual Automobile Insurance Company hereinafter "State Farm" and Jeff Rebarcak, Constance Rebarcak, Tom Bukacek, Arizona Diagnostic Group, Inc, American Diagnostic Group, Inc., Nationwide Diagnostic Solutions, Inc., hereinafter "Rebarcak Defendants"; and Banyan Corporation, an Oregon Corporation, Diagnostic USA, Inc., Diagnostic Solutions of America and Southern Diagnostic L.L.C., hereinafter "the Banyan Defendants" (hereinafter collectively referred to as "Defendants") for their Settlement Agreement and Mutual Release of Claims agree as follows:

### RECITALS

A.     On or about March 2006  State Farm filed a lawsuit against the Rebarcak Defendants and Banyan Defendants alleging various claims against the various Defendants and others,  and the parties having participated in a settlement conference with Michael Beale now wish to set forth their written agreement to compromise and settle all disputes between them. The Rebarcak Defendants state that financial statements provided as part of the settlement negotiations are a good faith representation of the assets and liabilities owed by Rebarcak Defendants.

B.     The parties acknowledge that by settling the claim between these parties, the parties by implication and intent also settle and dismiss the case against Banyan, Southern Diagnostics, Inc and Chiropractic USA, Inc., hereinafter Banyan Defendants.  Although the Banyan Defendants are not contributing any money to this settlement their liability was alleged to have been as a successor to ADG and NDS and by settling the claims against the Rebarcak Defendants the parties understand and agree that the claims against Banyan Defendants are also compromised and dismissed. The Banyan Defendants agree to be bound by this agreement.

### A G R E E M E N T

1.    The agreement is between State Farm and all Rebarcak Defendants and Banyan Defendants.

2.    As to State Farm cases, whether or not they are in litigation, Rebarcak Defendants and Banyan Defendants agree not to engage in mobile or in office electrodiagnostic testing, not to bill for or cause any billing for any component of Electrodiagnostic testing, not to participate in electrodiagnostic testing either directly or indirectly ("indirectly" in this context means any action through the present corporate or individual entity or through any subsidiary, successor corporation, family member or business partner or co-employee over whom a Defendant has supervision and control), now or in the future, and that in the event any Defendant discovers that a bill has been sent to State Farm or paid by State Farm, Defendants agree to immediately refund the money to State Farm together with the invoice and claim number and to send the refund to State Farm, PO Box 22045, Tempe, Arizona 85085. In the event Jeff Rebarcak is employed by an entity that causes a billing for Electrodiagnostic testing, the Jeff Rebarcak

Ex. 1

shall not be responsible for any billings submitted by said entity or its employees.  This exception does not relieve Jeff Rebarcak in any way of his personal and direct obligation to not bill State Farm for Electrodiagnostic testing he performs and/or orders to be performed on any of his patients.

3.    Electrodiagnostic testing includes:

| | |
|---|---|
| Spinal Diagnostic ultrasound | Nerve conduction velocity tests |
| Somatosensory evoked potentials | Electromyography tests |
| Dermatomal evoked potentials | |

4.    If any Defendant, acting directly or indirectly, intentionally or knowingly bills State Farm for any electrodiagnostic testing, State Farm shall be entitled to receive damages in the amount of treble the amount of each bill or claim, whether or not it was paid.  If State Farm identifies the billing and lack of notification, State Farm shall be entitled to treble damages plus $10,000 (Ten Thousand Dollars), together with attorney fees for each such bill or claim, whether or not said bill was paid by State Farm.  In the event Jeff Rebarcak is employed by an entity that causes a billing for Electrodiagnostic testing, then Jeff Rebarcak shall not be responsible for any billings submitted by said entity or its employees. This exception does not relieve Jeff Rebarcak in any way of his personal and direct obligation to not bill State Farm for Electrodiagnostic testing he performs and/or orders to be performed on any of his patients.

5.    Each Defendant who provides training or teaching of electrodiagnostic studies or their use, or who markets electrodiagnostic studies to medical providers will inform each class or student or medical provider that he or she has agreed to not bill State Farm for any such service.

6.    This agreement is intended to prohibit use of VT 3000 or similar equipment for similar technologies owned, leased or used by Defendants or their representatives and/or employees for State Farm cases/claims.

7.    Jeff and Constance Rebarcak agree to pay to State Farm the sum of $640,000.00 at 5% interest compounded.  There are additional payments due from Rebarcaks in connection with the settlement of the chiropractor Defendant which the parties have agreed to keep confidential at the request of the chiropractors Wall, Radminiejad, Bock and Price.

The payment of $640,000 at 5% interest shall be as follows
- Payment of $5,000/ month for 44 months starting August 1, 2008
- Payment of $10,000 per month for 24 months starting January 1, 2012
- Payment of $15,000/ month until the principal is paid in full starting January 1, 2014.
- Payments of $15,000/ month of the accrued interest until paid in full.

Jeff and Coni Rebarcak will sign a promissory notes in the amounts of $640,000.00 and $39,000.00 with real estate to secure $500,000.00 of the notes in conjunction with this agreement.

2

8. Defendants agree not to bill State Farm for the use of range of motion testing physical capacity testing made by JTECH or other vendors to justify chiropractic care and/or electrodiagnostic testing.

9. This agreement includes State Farm's offices and claims nationwide. All obligations set forth in Paragraphs 2, 4, 5, 6, and 8 apply whether the activities described occur in Arizona or in any other state.

10. State Farm will not issue any subpoenas to the Rebarcak defendants for depositions or documents. This includes officers and directors of the Rebarcak Defendants. However, other parties may subpoena documents from Rebarcak Defendants. State Farm may subpoena a custodian of records to establish foundation for records already provided in a lawsuit still pending in Pima County, Arizona.

11. This Agreement is entered into by the Parties to fully and finally settle disputed claims and to avoid the expense of litigation. Nothing in this Agreement, including the consideration recited herein, shall be deemed to be an admission of any kind by any of the Parties to this Agreement.

12. The pending action shall be dismissed with prejudice as to the parties to this Agreement, each side to bear their own costs and attorneys' fees.

13. State Farm and Defendants, as referenced herein, hereby release and forever discharge each and all of the parties and all of their agents, employees, liability insurers, predecessors, corporate parents, affiliates, subsidiaries, officers, owners, attorneys, representatives, or any other persons legally responsible for the acts or omissions of the individual parties from any and all claims or causes of action, known or unknown, presently existing, which the undersigned have or may have arising out of or in any way relating to the matters alleged in the lawsuit. This release includes, without limitation, any claims or causes of action between the parties that were or could have been asserted by any party to this Release, related to any past incident. By signing this Agreement, the parties attest that they have not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or portion thereof or interest therein which is released in this Agreement. The parties are aware that the law in Arizona, as provided in *Dansby v. Buck*, 92 Ariz. 1, 373 P.2d 1 (1962) is that unknown claims are only deemed released if there is an intent by the parties to make a compromise of any and whatever damages may exist from the underlying incidents, whether known or unknown. In this case, the parties intend that this release be for all claims, whether known or unknown. The parties acknowledge, therefore, that part of the consideration being paid is for unknown claims regardless of their nature and regardless of whether such claims could have been discovered or are even discoverable at this point in time from the period of January 2001 to the date of execution of this agreement.

14. This Agreement shall be governed in all respect whether as to validity, construction, capacity, performance or otherwise, by the laws of the state of Arizona and no action arising out of this Agreement may be brought except in the appropriate forum in the State of Arizona. The parties agree that all disputes concerning this agreement shall be heard by

3

the mediator in this case Michael Beale.  After execution of this agreement, a party may enforce this Agreement in any court of competent jurisdiction.

15. All notices, demands, elections or other communications required or permitted to be given pursuant to the terms and provisions hereof shall be either personally delivered or deposited in a regularly maintained receptacle of the United States mail, and sent certified mail return receipt requested, in a sealed wrapper with first-class postage prepaid, addressed to the parties as follows:

State Farm Mutual Automobile Insurance Company
Attn: SIU Department
PO Box 22045 Tempe,  Arizona 85085

16. State Farm may by written notice, change the address of notices or provide a different address for the payment of sums due pursuant to this Agreement.  State Farm shall notice to :

Jeff and Coni Rebarcak 776 Mariposa Drive, Durango, CO 81301

17. This Agreement constitutes the sole and entire agreement between the parties hereto and supersedes any and all understandings made prior hereto, if any.  This Agreement may be executed in counterparts.

18. The parties hereby represent that they have read and understand the contents of this Agreement.  That no representations other than those contained herein have been made to them to induce or influence their execution of this Agreement and they have executed this Agreement knowingly and voluntarily with independent legal advice of their own choosing.

19. The parties agree and acknowledge that should any portion of this Agreement be deemed unenforceable by a Court of competent jurisdiction, the unenforceable provisions shall be deemed severable from the rest of the Agreement and shall not affect the validity and enforceability of the remainder of the Agreement.

20. The parties agree that if any party to this Agreement attempts to enforce the terms hereof that the successful party is entitled to all costs and reasonable attorneys' fees incurred prior to and during any court action, including appeal, and the unsuccessful party is liable therefore.  The party who breaches this Agreement shall indemnify and hold the non-breaching party harmless from and against any loss, cost, damage or expenses, including specifically but not exclusively, attorneys' fees arising out of any such breach.

21. This release is not intended to release any other Defendant or party to the litigation described above.

22. Each party signing this release represents that the person signing on behalf of the corporation has authority to enter into this Agreement.

Executed on this _____ day of July, 2008.

Arizona Diagnostic Group, Inc.

_____
Constance Rebarcak

American Diagnostic Group, Inc.

_____
Constance Rebarcak

Nationwide Diagnostic Solutions, Inc.

_____
Constance Rebarcak

_____
Jeff Rebarcak  - Personally

_____
Constance Rebarcak - Personally

Banyan Corporation

_____
Michael Gelman

Southern Diagnostics, Inc

_____
Michael Gelman

Diagnostic USA

_____
Michael Gelman

Diagnostic Solutions, Inc.

_____
Michael Gelman

State Farm Mutual Automobile Insurance Company

By _____
08-04-2008

5

# EXHIBIT 2

# PROMISSORY NOTE
## (Secured by liens on real property)

$640,000.00                                               _____, 2008

For value received, this Note is executed by JEFFREY JOHN REBARCAK and CONSTANCE LOUISE REBARCAK, husband and wife ("Maker"). Definitions of capitalized terms not earlier defined herein appear at the end of this instrument.

Maker promises to pay to the order of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois mutual company, together with its successors and assigns (referred to hereinafter as "Payee"), at Bloomington, Illinois, or at such other place as Payee may from time to time designate, the principal sum of SIX HUNDRED FORTY THOUSAND DOLLARS ($640,000.00) together with interest on the principal balance outstanding from time to time (the "Principal Balance") from the date hereof at the rate or rates hereinafter specified.

Principal and interest shall be payable as follows: monthly installments of FIVE THOUSAND DOLLARS ($5000.00) shall be paid on the first day of each calendar month commencing August 1, 2008, for a period of 44 months, until January 1, 2012; monthly installments of TEN THOUSAND DOLLARS ($10,000.00) shall be paid on the first day of each calendar month commencing January 1, 2012, for a period of 24 months; monthly installments of FIFTEEN THOUSAND DOLLARS ($15,000.00) shall be paid on the first day of each calendar month commencing January 1, 2014, until all principal and accrued interest is paid in full. Interest shall accrue at the rate of five percent (5.00%) per annum, which shall be computed monthly and compounded annually on the 31st of March.

This Note is secured up to a total of $500,000 by deeds of trust or mortgages encumbering certain real property in Durango, County of La Plata, Colorado. A default in any of such security instruments shall be an event of default under this Note.

Each payment hereunder shall be applied: FIRST, to the payment of interest in arrears and any late charge, attorneys' fees or other charges payable hereunder; SECOND, to the repayment of any expenses of Payee for which Maker is responsible under the terms of this Note, and, THIRD, to principal. The principal balance so adjusted shall be the basis for future computation of interest.

If any of said payments of interest and principal are not paid within five (5) days after the date due, then, in addition to the amount of said payment, there shall be due at the option of Payee and without notice a late charge in respect of each said payment in the amount of five percent (5%) of the amount past due or the maximum rate permitted by law, whichever is less. The late charge shall, at the option of Payee, be charged every month until such payment, plus all accrued late charges, is paid in full.

Maker may prepay the unpaid Principal Balance in whole or from time to time in part, without prepayment penalty or premium, upon payment of interest accrued on the unpaid Principal Balance outstanding through the day of prepayment and all other charges then due under this Note. Prepayments of the Principal Balance shall be applied to installments of the Principal Balance remaining unpaid in the inverse order of their maturity and shall be credited to the Principal Balance as of the date of receipt by Payee.

Ex. 2

Should any scheduled payments of interest and for principal become due and remain unpaid, should the indebtedness evidenced hereby not be paid when due, or should default be made in the performance or observance of any of the covenants or conditions of this Note, or of the instruments securing this Note, the whole of the indebtedness evidenced by this Note, together with all unpaid surcharges, premiums, late charges and all accrued interest thereon remaining unpaid (and all interest thereafter accruing) shall forthwith bear interest at the rate of ten percentage points (10%) per annum over the Prime Interest Rate then existing and thereafter adjusted on the first day of every Quarter, with such interest to be compounded monthly on such amounts (including surcharges, premiums, late charges and default interest) accruing during each prior month until paid, and, thereupon, all the indebtedness owing under this Note, including the whole principal balance of the indebtedness evidenced by this Note, all accrued interest thereon remaining, together with interest as aforesaid and any surcharge, premium, late charge or charges payable hereunder, shall, at the option of Payee, immediately become due and payable without demand and without notice to any person, notice of the exercise of said option being hereby expressly waived, and Payee may enforce against Maker the payment of all said indebtedness, surcharges, premiums, late charge or charges, money advanced and interest by the exercise of such remedies or combination of remedies as Payee may have at law or in equity.

Maker agrees to pay all costs incurred in the collection hereof, including reasonable attorneys' fees, and agrees to indemnify and hold Payee harmless against all damages, liabilities, claims and costs (including without limitation reasonable attorneys' fees) incurred by Payee in connection with or as a result of any litigation to which Payee is made a party before any court because of the existence of the Note, the indebtedness evidenced hereby or any documents or instruments securing or guaranteeing such indebtedness.

The remedies of Payee shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Payee, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

Payee shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by Payee and, then, only to the extent specifically set forth in the writing. A waiver with reference to one event shall not be construed as continuing or as a bar to or waiver of any right or remedy as to a subsequent event.

Maker and all endorsers, guarantors, sureties, accommodation parties and all other persons liable or to become liable for all or any part of the indebtedness evidenced hereby, jointly and severally,

waive diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor and of maturity, and also recourse to suretyship defenses generally; and they also jointly and severally hereby consent to any and all renewals, extensions, revisions, substitutions or modifications of the terms hereof, including, but not limited to, time for payment and interest rate, and further agree that any such renewals, extensions, revisions, substitutions or modifications of the terms hereof, or the release or substitution of any security for the indebtedness evidenced hereby, or any other indulgences evidenced by or related to this Note, shall not be a defense to payment. Any such renewals, extensions, revisions, substitutions or modifications may be without notice to any of said parties.

Notwithstanding any provision in this Note, the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees or any sums which may at any time be deemed to be interest, shall not exceed the amount which Payee may lawfully collect. In the event the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees or other sums which may at any time be deemed to be interest, shall, for any reason whatsoever, result in an effective rate of interest, which for any month or other interest payment period exceeds the amount which Payee may lawfully collect, all sums in excess of those lawfully collectible as interest for the period in question shall, without further notice to any party hereto, be applied as a premium-free reduction of the Principal Balance immediately upon receipt of such sums by Payee, with the same force and effect as though Maker had specifically designated such excess sums to be so applied to the reduction of the Principal Balance; provided, however, that Payee may, at any time, and from time to time, elect, by notice in writing to Maker, to waive, reduce or limit the collection of any sums (or refund to Maker any sums collected) in excess of those lawfully collectible as interest rather than accept such sums as prepayment of the Principal Balance.

In the event any one or more of the provisions hereof shall be invalid, illegal or unenforceable in any respect, the validity of the remaining provisions hereof shall be in no way affected, prejudiced or disturbed thereby.

This Note shall be governed by and construed in accordance with the internal, substantive law of the State of Arizona without regard to its principles of choice of law.

Time is of the essence of this Note.

The term "Prime Interest Rate" shall mean the per annum interest rate announced from time to time as the "prime" rate by the New York City edition of The Wall Street Journal or any successor publication.

The term "Quarter" shall mean each three-month period commencing January 1, April 1, July 1 and October 1 during the term of this Note.

IN WITNESS WHEREOF, Maker, intending to be legally bound hereby, has duly executed this Note as of the day and year first above written.

MAKER:

JEFFREY JOHN REBARCAK

CONSTANCE LOUISE REBARCAK

3

# EXHIBIT 3

## PROMISSORY NOTE
### (Secured by liens on real property)

$39,000.00                                                           August 1, 2008

For value received, this Note is executed by JEFFREY JOHN REBARCAK and CONSTANCE LOUISE REBARCAK, husband and wife ("Maker"). Definitions of capitalized terms not earlier defined herein appear at the end of this instrument.

Maker promises to pay to the order of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois mutual company, together with its successors and assigns (referred to hereinafter as "Payee"), at Bloomington, Illinois, or at such other place as Payee may from time to time designate, the principal sum of THIRTY-NINE THOUSAND DOLLARS ($39,000.00) together with interest on the principal balance outstanding from time to time (the "Principal Balance") from the date hereof at the rate of five percent (5.00%) per annum, which shall be computed monthly and compounded annually on the 31st of March.

Principal and interest shall be payable as follows: monthly installments of FIVE THOUSAND DOLLARS ($5000.00) shall be paid on the first day of each calendar month commencing the month immediately following final payment and satisfaction of that certain Promissory Note from Makers to Payee of this date in the amount of $640,000.00 (the "First Note"), until all principal and accrued interest is paid in full. A default in payment of the First Note shall be a default under this Note.

This Note is secured by deeds of trust or mortgages encumbering certain real property in La Plata County, Colorado. A default in any of such security instruments shall be an event of default under this Note.

Each payment hereunder shall be applied: FIRST, to the payment of interest in arrears and any late charge, attorneys' fees or other charges payable hereunder; SECOND, to the repayment of any expenses of Payee for which Maker is responsible under the terms of this Note or any instrument securing this Note, and, THIRD, to principal. The principal balance so adjusted shall be the basis for future computation of interest.

If any of said payments of interest and principal are not paid within five (5) days after the date due, then, in addition to the amount of said payment, there shall be due at the option of Payee and without notice a late charge in respect of each said payment in the amount of five percent (5%) of the amount past due or the maximum rate permitted by law, whichever is less. The late charge shall, at the option of Payee, be charged every month until such payment, plus all accrued late charges, is paid in full.

Maker may prepay the unpaid Principal Balance in whole or from time to time in part, without prepayment penalty or premium, upon payment of interest accrued on the unpaid Principal Balance outstanding through the day of prepayment and all other charges then due under this Note. Prepayments of the Principal Balance shall be applied to installments of the Principal Balance remaining unpaid in the inverse order of their maturity and shall be credited to the Principal Balance as of the date of receipt by Payee.

1

Ex. 3

Should any scheduled payments of interest and for principal become due and remain unpaid, should the indebtedness evidenced hereby not be paid when due, or should default be made in the performance or observance of any of the covenants or conditions of this Note, or of the First Note, or the instruments securing this Note, the whole of the indebtedness evidenced by this Note, together with all unpaid surcharges, premiums, late charges and all accrued interest thereon remaining unpaid (and all interest thereafter accruing) shall forthwith bear interest at the rate of ten percentage points (10%) per annum over the Prime Interest Rate then existing and thereafter adjusted on the first day of every Quarter, with such interest to be compounded monthly on such amounts (including surcharges, premiums, late charges and default interest) accruing during each prior month until paid, and, thereupon, all the indebtedness owing under this Note, including the whole principal balance of the indebtedness evidenced by this Note, all accrued interest thereon remaining, together with interest as aforesaid and any surcharge, premium, late charge or charges payable hereunder, shall, at the option of Payee, immediately become due and payable without demand and without notice to any person, notice of the exercise of said option being hereby expressly waived, and Payee may enforce against Maker the payment of all said indebtedness, surcharges, premiums, late charge or charges, money advanced and interest by the exercise of such remedies or combination of remedies as Payee may have at law or in equity.

Maker agrees to pay all costs incurred in the collection hereof, including reasonable attorneys' fees, and agrees to indemnify and hold Payee harmless against all damages, liabilities, claims and costs (including without limitation reasonable attorneys' fees) incurred by Payee in connection with or as a result of any litigation to which Payee is made a party before any court because of the existence of the Note, the indebtedness evidenced hereby or any documents or instruments securing or guaranteeing such indebtedness.

The remedies of Payee shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Payee, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

Payee shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by Payee and, then, only to the extent specifically set forth in the writing. A waiver with reference to one event shall not be construed as continuing or as a bar to or waiver of any right or remedy as to a subsequent event.

Maker and all endorsers, guarantors, sureties, accommodation parties and all other persons liable or to become liable for all or any part of the indebtedness evidenced hereby, jointly and severally, waive diligence, presentment, protest and demand, and also notice of protest, of demand, of nonpayment, of dishonor and of maturity, and also recourse to suretyship defenses generally; and they also jointly and severally hereby consent to any and all renewals, extensions, revisions, substitutions or modifications of the terms hereof, including, but not limited to, time for payment and interest rate, and further agree that any such renewals, extensions, revisions, substitutions or modifications of the terms hereof, or the release or substitution of any security for the indebtedness evidenced hereby, or any other indulgences evidenced by or related to this Note, shall not be a defense to payment. Any such renewals, extensions, revisions, substitutions or modifications may be without notice to any of said parties.

Notwithstanding any provision in this Note, the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees or any sums which may at any time be deemed to be interest, shall not exceed the amount which Payee may lawfully collect. In the event the total liability for payments of interest and payments in the nature of interest, including without limitation, all charges, fees or other sums which may at any time be deemed to be interest, shall, for any reason whatsoever, result in an effective rate of interest, which for any month or other interest payment period exceeds the amount which Payee may lawfully collect, all sums in excess of those lawfully collectible as interest for the period in question shall, without further notice to any party hereto, be applied as a premium-free reduction of the Principal Balance immediately upon receipt of such sums by Payee, with the same force and effect as though Maker had specifically designated such excess sums to be so applied to the reduction of the Principal Balance; provided, however, that Payee may, at any time, and from time to time, elect, by notice in writing to Maker, to waive, reduce or limit the collection of any sums (or refund to Maker any sums collected) in excess of those lawfully collectible as interest rather than accept such sums as prepayment of the Principal Balance.

In the event any one or more of the provisions hereof shall be invalid, illegal or unenforceable in any respect, the validity of the remaining provisions hereof shall be in no way affected, prejudiced or disturbed thereby.

This Note shall be governed by and construed in accordance with the internal, substantive law of the State of Arizona without regard to its principles of choice of law.

Time is of the essence of this Note.

The term "Prime Interest Rate" shall mean the per annum interest rate announced from time to time as the "prime" rate by the New York City edition of The Wall Street Journal or any successor publication.

The term "Quarter" shall mean each three-month period commencing January 1, April 1, July 1 and October 1 during the term of this Note.

IN WITNESS WHEREOF, Maker, intending to be legally bound hereby, has duly executed this Note as of the day and year first above written.

MAKER:

JEFFREY JOHN REBARCAK

CONSTANCE LOUISE REBARCAK

3

# EXHIBIT 4

1 The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission
2 (TD72-10-06) (Mandatory 1-07)
3 IF THIS FORM IS USED IN A CONSUMER CREDIT TRANSACTION, CONSULT LEGAL COUNSEL.
4 THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE
5 CONSULTED BEFORE SIGNING.

## DEED OF TRUST
### (Due on Transfer - Strict)

9 THIS DEED OF TRUST is made this _____ day of _____, 20___, between R3 HOLDINGS, LLC, a Colorado limited
10 liability company                     (Borrower), whose address is 776 Mariposa Drive, Durango, CO 81301
11 and the Public Trustee of the County in which the Property is situated (Trustee); for the benefit of
12 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation           (Lender), whose address is
13 Corporate Legal Department, One State Farm Plaza, B-3, Bloomington, IL 61710
14 Borrower and Lender covenant and agree as follows:
15      1.      Property In Trust. Borrower, in consideration of the indebtedness herein recited and the trust herein created,
16 hereby grants and conveys to Trustee in trust, with power of sale, the following legally described property located in the
17 County of La Plata           State of Colorado:
18 Lot 2, CASTLEROCK MOUNTAIN VILLAGE, PHASE I – Lots 1 and 2 Amended Plat Project No. 2005-101, according to the plat thereof filed for
19 record August 8, 2005 as Reception No. 916128, County of La Plata, State of Colorado,
20
21 known as No. Lot 2, CASTLEROCK MOUNTAIN VILLAGE, Durango, CO 81301                     (Property Address),
22              Street Address              City              State              Zip
23 together with all its appurtenances (Property).
24      2.      Note; Other Obligations Secured. This Deed of Trust is given to secure to Lender:
25      A.  The repayment of the indebtedness evidenced by two Promissory Notes dated _____, 2008, by Makers
26 JEFFREY JOHN REBARCAK and CONSTANCE LOUISE REBARCAK, husband and wife, in favor of Lender or order, in the principal
27 sums of Six Hundred Forty Thousand Dollars ($640,000) and Thirty-nine Thousand Dollars ($39,000), together with interest on the
28 unpaid principal balance from August 1, 2008 until paid, at the rate of FIVE percent (5.0%) rate per annum, with principal and interest payable
29 as follows:  monthly installments of FIVE THOUSAND DOLLARS ($5000.00) shall be paid on the first day of each calendar month
30 commencing August 1, 2008, for a period of 44 months; monthly installments of TEN THOUSAND DOLLARS ($10,000.00) shall be paid on
31 the first day of each calendar month commencing January 1, 2012, for a period of 24 months; monthly installments of FIFTEEN THOUSAND
32 DOLLARS ($15,000.00)  shall be paid on the first day of each calendar month commencing January 1, 2014, until all principal and accrued
33 interest is paid in full. Interest shall accrue at the rate of five percent (5.00%) per annum, which shall be computed monthly and compounded
34 annually on the 31st of July;  Borrower has the right to prepay the principal amount outstanding under said Note, in whole or in part, at any
35 time without penalty. Please also reference Paragraph 26.
36      B.  The payment of all other sums, with interest thereon at  8.0   % per annum, disbursed by Lender in accordance
37 with this Deed of Trust to protect the security of this Deed of Trust; and
38      C.  The performance of the covenants and agreements of Borrower herein contained.
39      3.      Title. Borrower covenants that Borrower owns and has the right to grant and convey the Property, and warrants
40 title to the same, subject to general real estate taxes for the current year; easements of record or in existence, and recorded
41 declarations, restrictions, reservations and covenants, if any, as of this date and except prior deed of trust
42      4.      Payment of Principal and Interest. Borrower shall promptly pay when due the principal of and interest on the
43 indebtedness evidenced by the Note, and late charges as provided in the Note and shall perform all of Borrower's other covenants
44 contained in the Note.
45      5.      Application of Payments. All payments received by Lender under the terms hereof shall be applied by Lender
46 first in payment of amounts due pursuant to paragraph 23 (Escrow Funds for Taxes and Insurance), then to amounts disbursed by
47 Lender pursuant to paragraph 9 (Protection of Lender's Security), and the balance in accordance with the terms and conditions of the
48 Note.
49      6.      Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations
50 under any prior deed of trust and any other prior liens.  Borrower shall pay all taxes, assessments and other charges, fines and
51 impositions attributable to the Property which may have or attain a priority over this Deed of Trust, and leasehold payments or
52 ground rents, if any, in the manner set out in paragraph 23 (Escrow Funds for Taxes and Insurance) or, if not required to be paid in
53 such manner, by Borrower making payment when due, directly to the payee thereof. Despite the foregoing, Borrower shall not be
54 required to make payments otherwise required by this paragraph if Borrower, after notice to Lender, shall in good faith contest such
55 obligation by, or defend enforcement of such obligation in, legal proceedings which operate to prevent the enforcement of the
56 obligation or forfeiture of the Property or any part thereof, only upon Borrower making all such contested payments and other
57 payments as ordered by the court to the registry of the court in which such proceedings are filed.
58      7.      Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property
59 insured against loss by fire or hazards included within the term "extended coverage" in an amount at least equal to the lesser of (a)
60 the insurable value of the Property or (b) an amount sufficient to pay the sums secured by this Deed of Trust as well as any prior
61 encumbrances on the Property. All of the foregoing shall be known as "Property Insurance."

Ex. 4

The insurance carrier providing the insurance shall be qualified to write Property Insurance in Colorado and shall be chosen by Borrower subject to Lender's right to reject the chosen carrier for reasonable cause. All insurance policies and renewals thereof shall include a standard mortgage clause in favor of Lender, and shall provide that the insurance carrier shall notify Lender at least ten (10) days before cancellation, termination or any material change of coverage. Insurance policies shall be furnished to Lender at or before closing. Lender shall have the right to hold the policies and renewals thereof.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Insurance proceeds shall be applied to restoration or repair of the Property damaged, provided said restoration or repair is economically feasible and the security of this Deed of Trust is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Deed of Trust would be impaired, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is given in accordance with paragraph 16 (Notice) by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Any such application of proceeds to principal shall not extend or postpone the due date of the installments referred to in paragraphs 4 (Payment of Principal and Interest) and 23 (Escrow Funds for Taxes and Insurance) or change the amount of such installments. Notwithstanding anything herein to the contrary, if under paragraph 18 (Acceleration; Foreclosure; Other Remedies) the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

All of the rights of Borrower and Lender hereunder with respect to insurance carriers, insurance policies and insurance proceeds are subject to the rights of any holder of a prior deed of trust with respect to said insurance carriers, policies and proceeds.

8.    Preservation and Maintenance of Property. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. Borrower shall perform all of Borrower's obligations under any declarations, covenants, by-laws, rules, or other documents governing the use, ownership or occupancy of the Property.

9.    Protection of Lender's Security. Except when Borrower has exercised Borrower's rights under paragraph 6 above, if Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if a default occurs in a prior lien, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, with notice to Borrower if required by law, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to:

(a)    any general or special taxes or ditch or water assessments levied or accruing against the Property;

(b)    the premiums on any insurance necessary to protect any improvements comprising a part of the Property;

(c)    sums due on any prior lien or encumbrance on the Property;

(d)    if the Property is a leasehold or is subject to a lease, all sums due under such lease;

(e)    the reasonable costs and expenses of defending, protecting, and maintaining the Property and Lender's interest in the Property, including repair and maintenance costs and expenses, costs and expenses of protecting and securing the Property, receiver's fees and expenses, inspection fees, appraisal fees, court costs, attorney fees and costs, and fees and costs of an attorney in the employment of Lender or holder of the certificate of purchase;

(f)    all other costs and expenses allowable by the evidence of debt or this Deed of Trust; and

(g)    such other costs and expenses which may be authorized by a court of competent jurisdiction.

Borrower hereby assigns to Lender any right Borrower may have by reason of any prior encumbrance on the Property or by law or otherwise to cure any default under said prior encumbrance.

Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and Lender may bring suit to collect any amounts so disbursed plus interest specified in paragraph 2B (Note; Other Obligations Secured). Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

10.    Inspection. Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

11.    Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender as herein provided. However, all of the rights of Borrower and Lender hereunder with respect to such proceeds are subject to the rights of any holder of a prior deed of trust.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, the proceeds remaining after taking out any part of the award due any prior lien holder (net award) shall be divided between Lender and Borrower, in the same ratio as the amount of the sums secured by this Deed of Trust immediately prior to the date of taking bears to Borrower's equity in the Property immediately prior to the date of taking. Borrower's equity in the Property means the fair market value of the Property less the amount of sums secured by both this Deed of Trust and all prior liens (except taxes) that are to receive any of the award, all at the value immediately prior to the date of taking.

If the Property is abandoned by Borrower or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is given, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Any such application of proceeds to principal shall not extend or postpone the due date of the installments referred to in paragraphs 4 (Payment of Principal and Interest) and 23 (Escrow Funds for Taxes and Insurance) nor change the amount of such installments.

12. **Borrower not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower, nor Borrower's successors in interest, from the original terms of this Deed of Trust. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower nor Borrower's successors in interest.

13. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by law, shall not be a waiver or preclude the exercise of any such right or remedy.

14. **Remedies Cumulative.** Each remedy provided in the Note and this Deed of Trust is distinct from and cumulative to all other rights or remedies under the Note and this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

15. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 24 (Transfer of the Property; Assumption). All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs in this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

16. **Notice.** Except for any notice required by law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be in writing and shall be given and be effective upon (1) delivery to Borrower or (2) mailing such notice by first class U.S. mail, addressed to Borrower at Borrower's address stated herein or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be in writing and shall be given and be effective upon (1) delivery to Lender or (2) mailing such notice by first class U.S. mail, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in any manner designated herein.

17. **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the law of Colorado. In the event that any provision or clause of this Deed of Trust or the Note conflicts with the law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and Note are declared to be severable.

18. **Acceleration; Foreclosure; Other Remedies.** Except as provided in paragraph 24 (Transfer of the Property; Assumption), upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, or upon any default in a prior lien upon the Property, (unless Borrower has exercised Borrower's rights under paragraph 6 above), at Lender's option, all of the sums secured by this Deed of Trust shall be immediately due and payable (Acceleration). To exercise this option, Lender may invoke the power of sale and any other remedies permitted by law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Deed of Trust, including, but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of such election. Trustee shall give such notice to Borrower of Borrower's rights as is provided by law. Trustee shall record a copy of such notice as required by law. Trustee shall advertise the time and place of the sale of the Property, for not less than four weeks in a newspaper of general circulation in each county in which the Property is situated, and shall mail copies of such notice of sale to Borrower and other persons as prescribed by law. After the lapse of such time as may be required by law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place (which may be on the Property or any part thereof as permitted by law) in one or more parcels as Trustee may think best and in such order as Trustee may determine. Lender or Lender's designee may purchase the Property at any sale. It shall not be obligatory upon the purchaser at any such sale to see to the application of the purchase money.

Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

19. **Borrower's Right to Cure Default.** Whenever foreclosure is commenced for nonpayment of any sums due hereunder, the owners of the Property or parties liable hereon shall be entitled to cure said defaults by paying all delinquent principal and interest payments due as of the date of cure, costs, expenses, late charges, attorney's fees and other fees all in the manner provided by law. Upon such payment, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as though no Acceleration had occurred, and the foreclosure proceedings shall be discontinued.

20. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property; however, Borrower shall, prior to Acceleration under paragraph 18

182 (Acceleration; Foreclosure; Other Remedies) or abandonment of the Property, have the right to collect and retain such rents as they
183 become due and payable.

184    Lender or the holder of the Trustee's certificate of purchase shall be entitled to a receiver for the Property after Acceleration
185 under paragraph 18 (Acceleration; Foreclosure; Other Remedies), and shall also be so entitled during the time covered by foreclosure
186 proceedings and the period of redemption, if any; and shall be entitled thereto as a matter of right without regard to the solvency or
187 insolvency of Borrower or of the then owner of the Property, and without regard to the value thereof. Such receiver may be
188 appointed by any Court of competent jurisdiction upon ex parte application and without notice, notice being hereby expressly
189 waived.

190    Upon Acceleration under paragraph 18 (Acceleration; Foreclosure; Other Remedies) or abandonment of the Property,
191 Lender, in person, by agent or by judicially-appointed receiver, shall be entitled to enter upon, take possession of and manage the
192 Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be
193 applied, first to payment of the costs of preservation and management of the Property, second to payments due upon prior liens, and
194 then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually
195 received.

196    21.    Release. Upon payment of all sums secured by this Deed of Trust, Lender shall cause Trustee to release this Deed
197 of Trust and shall produce for Trustee the Note. Borrower shall pay all costs of recordation and shall pay the statutory Trustee's fees.
198 If Lender shall not produce the Note as aforesaid, then Lender, upon notice in accordance with paragraph 16 (Notice) from Borrower
199 to Lender, shall obtain, at Lender's expense, and file any lost instrument bond required by Trustee or pay the cost thereof to effect the
200 release of this Deed of Trust.

201    22.    Waiver of Exemptions. Borrower hereby waives all right of homestead and any other exemption in the Property
202 under state or federal law presently existing or hereafter enacted.

203    23.    Escrow Funds for Taxes and Insurance. This paragraph 23 is not applicable if Funds, as defined below, are
204 being paid pursuant to a prior encumbrance. Subject to applicable law, Borrower shall pay to Lender, on each day installments of
205 principal and interest are payable under the Note, until the Note is paid in full, a sum (herein referred to as "Funds") equal to _____
206 of the yearly taxes and assessments which may attain priority over this Deed of Trust, plus _____ of yearly premium installments for
207 Property Insurance, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and
208 reasonable estimates thereof, taking into account any excess Funds not used or shortages.

209    The principal of the Funds shall be held in a separate account by Lender in trust for the benefit of Borrower and deposited
210 in an institution, the deposits or accounts of which are insured or guaranteed by a federal or state agency. Lender shall apply the
211 Funds to pay said taxes, assessments and insurance premiums. Lender may not charge for so holding and applying the Funds,
212 analyzing said account or verifying and compiling said assessments and bills. Lender shall not be required to pay Borrower any
213 interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits
214 and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security
215 for the sums secured by this Deed of Trust.

216    If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments and insurance premiums as they
217 fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is given
218 in accordance with paragraph 16 (Notice) by Lender to Borrower requesting payment thereof. Provided however, if the loan secured
219 by this Deed of Trust is subject to RESPA or other laws regulating Escrow Accounts, such deficiency, surplus or any other required
220 adjustment shall be paid, credited or adjusted in compliance with such applicable laws.

221    Upon payment in full of all sums secured by this Deed of Trust, Lender shall simultaneously refund to Borrower any Funds
222 held by Lender. If under paragraph 18 (Acceleration; Foreclosure; Other Remedies) the Property is sold or the Property is otherwise
223 acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender,
224 whichever occurs first, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of
225 Trust.

226    24.    Transfer of the Property; Assumption. The following events shall be referred to herein as a "Transfer": (i) a
227 transfer or conveyance of title (or any portion thereof, legal or equitable) of the Property (or any part thereof or interest therein), (ii)
228 the execution of a contract or agreement creating a right to title (or any portion thereof, legal or equitable) in the Property (or any
229 part thereof or interest therein), (iii) or an agreement granting a possessory right in the Property (or any portion thereof), in excess of
230 3 years, (iv) a sale or transfer of, or the execution of a contract or agreement creating a right to acquire or receive, more than fifty
231 percent (50%) of the controlling interest or more than fifty percent (50%) of the beneficial interest in Borrower, (v) the
232 reorganization, liquidation or dissolution of Borrower. Not to be included as a Transfer are (i) the creation of a lien or encumbrance
233 subordinate to this Deed of Trust, (ii) the creation of a purchase money security interest for household appliances, or (iii) a transfer
234 by devise, descent or by operation of the law upon the death of a joint tenant. At the election of Lender, in the event of each and
235 every Transfer:

236    (a)    All sums secured by this Deed of Trust shall become immediately due and payable (Acceleration),

237    (b)    If a Transfer occurs and should Lender not exercise Lender's option pursuant to this paragraph 24 to Accelerate,
238 Transferee shall be deemed to have assumed all of the obligations of Borrower under this Deed of Trust including all sums secured
239 hereby whether or not the instrument evidencing such conveyance, contract or grant expressly so provides. This covenant shall run
240 with the Property and remain in full force and effect until said sums are paid in full. Lender may without notice to Borrower deal
241 with Transferee in the same manner as with Borrower with reference to said sums including the payment or credit to Transferee of

undisbursed reserve Funds on payment in full of said sums, without in any way altering or discharging Borrower's liability hereunder for the obligations hereby secured.

(c)    Should Lender not elect to Accelerate upon the occurrence of such Transfer then, subject to (b) above, the mere fact of a lapse of time or the acceptance of payment subsequent to any of such events, whether or not Lender had actual or constructive notice of such Transfer, shall not be deemed a waiver of Lender's right to make such election nor shall Lender be estopped therefrom by virtue thereof.  The issuance on behalf of Lender of a routine statement showing the status of the loan, whether or not Lender had actual or constructive notice of such Transfer, shall not be a waiver or estoppel of Lender's said rights.

25.    Borrower's Copy.  Borrower acknowledges receipt of a copy of the Note and this Deed of Trust.

26.    Notwithstanding any previous provisions the principal and interest on the $39,000.00 promissory note (second note) regarding the Chiropractic Defendants shall be payable as follows:  monthly installments of FIVE THOUSAND DOLLARS ($5000.00) shall be paid on the first day of each calendar month commencing the month immediately following final payment and satisfaction of that certain Promissory Note from Makers to Payee of this date in the amount of $640,000.00 (the "First Note"), until all principal and accrued interest is paid in full.  A default in payment of the First Note shall be a default under this Note.

<div align="center">EXECUTED BY BORROWER.</div>

IF BORROWER IS NATURAL PERSON(s):

_____

_____ doing business as _____

IF BORROWER IS CORPORATION:

ATTEST:                                   R3 Holdings
                                          _____
                                          Name of Corporation

_____     By _____
        Secretary                              President

(SEAL)

IF BORROWER IS PARTNERSHIP:               R3 HOLDINGS LLC
                                          _____
                                          Name of Partnership

_____     By _____
                                          A General Partner

STATE OF COLORADO          }
                           } ss.
_____ COUNTY OF  La Plata }

The foregoing instrument was acknowledged before me this 28th day of July, 2008, by
Jeff Kabancik

Witness my hand and official seal.
My Commission expires 04-19-2009

                                          Jennifer Griego
                                          _____
                                          Notary Public
                                          1099 Main Ave  Durango, Co
                                          _____
                                          Address                81301

MY COMMISSION EXPIRES 04/19/2009

*If a natural person or persons, insert the name(s) of such person(s).  If a corporation, insert, for example, "John Doe as President and Jane Doe as Secretary of Doe & Co., a Colorado corporation."  If a partnership, insert, for example, "Sam Smith as general partner in and for Smith & Smith, a general partnership."

# EXHIBIT 5

1 | The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission
2 | (TD72-10-06) (Mandatory 1-97)
3 | IF THIS FORM IS USED IN A CONSUMER CREDIT TRANSACTION, CONSULT LEGAL COUNSEL.
4 | THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER COUNSEL SHOULD BE
5 | CONSULTED BEFORE SIGNING.

## DEED OF TRUST
### (Due on Transfer - Strict)

9 | THIS DEED OF TRUST is made this _____ day of _____ 20 ___, between R3 HOLDINGS, LLC, a Colorado limited
10 | liability company _____ (Borrower), whose address is 776 Mariposa Drive, Durango, CO 81301
11 | and the Public Trustee of the County in which the Property (see paragraph 1) is situated (Trustee); for the benefit of
12 | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation _____ (Lender), whose address is
13 | Corporate Legal Department, One State Farm Plaza, B-3, Bloomington, IL 61710

14 | Borrower and Lender covenant and agree as follows:
15 |     1.    Property in Trust. Borrower, in consideration of the indebtedness herein recited and the trust herein created,
16 | hereby grants and conveys to Trustee in trust, with power of sale, the following legally described property located in the
17 | County of La Plata _____ State of Colorado:
18 | Lot 3 of TWO DOGS Phase I Subdivision, Project No. 98-51, according to the plat thereof filed for record August 4, 1998 under reception no.
19 | 760854, County of La Plata, State of Colorado;

21 | known as No. 276 Pinnacle View Drive, Durango, CO 81301 _____ (Property Address),
22 |     Street Address    City    State    Zip
23 | together with all its appurtenances (Property).
24 |     2.    Note; Other Obligations Secured. This Deed of Trust is given to secure to Lender:
25 |     A.    The repayment of the indebtedness evidenced by two Promissory Notes dated _____, 2008, by
26 | Makers JEFFREY JOHN REBARCAK and CONSTANCE LOUISE REBARCAK, husband and wife, in favor of Lender or order, in
27 | the principal sums of Six Hundred Forty Thousand Dollars ($640,000) and Thirty-nine Thousand Dollars ($39,000), together with
28 | interest on the unpaid principal balance from August 1, 2008 until paid, at the rate of FIVE percent (5.0%) rate per annum, with principal
29 | and interest payable as follows: monthly installments of FIVE THOUSAND DOLLARS ($5000.00) shall be paid on the first day of each
30 | calendar month commencing August 1, 2008, for a period of 44 months; monthly installments of TEN THOUSAND DOLLARS
31 | ($10,000.00) shall be paid on the first day of each calendar month commencing January 1, 2012, for a period of 24 months; monthly
32 | installments of FIFTEEN THOUSAND DOLLARS ($15,000.00) shall be paid on the first day of each calendar month commencing
33 | January 1, 2014, until all principal and accrued interest is paid in full. Interest shall accrue at the rate of five (5.00%) per annum,
34 | which shall be computed monthly and compounded annually on the 31st of July; Borrower has the right to prepay the principal amount
35 | outstanding under said Note, in whole or in part, at any time without penalty. Please also reference Paragraph 26.
36 |     B.    The payment of all other sums, with interest thereon at 5.0 % per annum, disbursed by Lender in accordance
37 | with this Deed of Trust to protect the security of this Deed of Trust; and
38 |     C.    the performance of the covenants and agreements of Borrower herein contained.
39 |     3.    Title. Borrower covenants that Borrower owns and has the right to grant and convey the Property, and warrants
40 | title to the same, subject to general real estate taxes for the current year, easements of record or in existence, and recorded
41 | declarations, restrictions, reservations and covenants, if any, as of this date and except prior deed of trust
42 |     4.    Payment of Principal and Interest. Borrower shall promptly pay when due the principal of and interest on the
43 | indebtedness evidenced by the Note, and late charges as provided in the Note and shall perform all of Borrower's other covenants
44 | contained in the Note.
45 |     5.    Application of Payments. All payments received by Lender under the terms hereof shall be applied by Lender
46 | first in payment of amounts due pursuant to paragraph 23 (Escrow Funds for Taxes and Insurance), then to amounts disbursed by
47 | Lender pursuant to paragraph 9 (Protection of Lender's Security), and the balance in accordance with the terms and conditions of the
48 | Note.
49 |     6.    Prior Mortgages and Deeds of Trusts; Charges; Liens. Borrower shall perform all of Borrower's obligations
50 | under any prior deed of trust and any other prior liens. Borrower shall pay all taxes, assessments and other charges, fines and
51 | impositions attributable to the Property which may have or attain a priority over this Deed of Trust, and leasehold payments or
52 | ground rents, if any, in the manner set out in paragraph 23 (Escrow Funds for Taxes and Insurance) or, if not required to be paid in
53 | such manner, by Borrower making payment when due, directly to the payee thereof. Despite the foregoing, Borrower shall not be
54 | required to make payments otherwise required by this paragraph if Borrower, after notice to Lender, shall in good faith contest such
55 | obligation by, or defend enforcement of such obligation in, legal proceedings which operate to prevent the enforcement of the
56 | obligation or forfeiture of the Property or any part thereof, only upon Borrower making all such contested payments and other
57 | payments as ordered by the court to the registry of the court in which such proceedings are filed.
58 |     7.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property
59 | insured against loss by fire or hazards included within the term "extended coverage" in an amount at least equal to the lesser of (a)
60 | the insurable value of the Property or (b) an amount sufficient to pay the sums secured by this Deed of Trust as well as any prior
61 | encumbrances on the Property. All of the foregoing shall be known as "Property Insurance."

Ex. 5

62    The insurance carrier providing the insurance shall be qualified to write Property Insurance in Colorado and shall be chosen
63 by Borrower subject to Lender's right to reject the chosen carrier for reasonable cause. All insurance policies and renewals thereof
64 shall include a standard mortgage clause in favor of Lender, and shall provide that the insurance carrier shall notify Lender at least
65 ten (10) days before cancellation, termination or any material change of coverage. Insurance policies shall be furnished to Lender at
66 or before closing. Lender shall have the right to hold the policies and renewals thereof.
67    In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss
68 if not made promptly by Borrower.
69    Insurance proceeds shall be applied to restoration or repair of the Property damaged, provided said restoration or repair is
70 economically feasible and the security of this Deed of Trust is not thereby impaired. If such restoration or repair is not economically
71 feasible or if the security of this Deed of Trust would be impaired, the insurance proceeds shall be applied to the sums secured by
72 this Deed of Trust, with the excess, if any, paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fails to
73 respond to Lender within 30 days from the date notice is given in accordance with paragraph 16 (Notice) by Lender to Borrower that
74 the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds,
75 at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.
76    Any such application of proceeds to principal shall not extend or postpone the due date of the installments referred to in
77 paragraphs 4 (Payment of Principal and Interest) and 23 (Escrow Funds for Taxes and Insurance) or change the amount of such
78 installments. Notwithstanding anything herein to the contrary, if under paragraph 18 (Acceleration; Foreclosure; Other Remedies)
79 the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds
80 thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured
81 by this Deed of Trust immediately prior to such sale or acquisition.
82    All of the rights of Borrower and Lender hereunder with respect to insurance carriers, insurance policies and insurance
83 proceeds are subject to the rights of any holder of a prior deed of trust with respect to said insurance carriers, policies and proceeds.
84    8.    **Preservation and Maintenance of Property.** Borrower shall keep the Property in good repair and shall not
85 commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of
86 Trust is on a leasehold. Borrower shall perform all of Borrower's obligations under any declarations, covenants, by-laws, rules, or
87 other documents governing the use, ownership or occupancy of the Property.
88    9.    **Protection of Lender's Security.** Except when Borrower has exercised Borrower's rights under paragraph 6
89 above, if Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if a default occurs in a prior
90 lien, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's
91 option, with notice to Borrower if required by law, may make such appearances, disburse such sums and take such action as is
92 necessary to protect Lender's interest, including, but not limited to:
93      (a)    any general or special taxes, or ditch or water assessments levied or accruing against the Property;
94      (b)    the premiums on any insurance necessary to protect any improvements comprising a part of the Property;
95      (c)    sums due on any prior lien or encumbrance on the Property;
96      (d)    if the Property is a leasehold or is subject to a lease, all sums due under such lease;
97      (e)    the reasonable costs and expenses of defending, protecting, and maintaining the Property and Lender's interest in
98 the Property, including repair and maintenance costs and expenses, costs and expenses of protecting and securing the Property,
99 receiver's fees and expenses, inspection fees, appraisal fees, court costs, attorney fees and costs, and fees and costs of an attorney in
100 the employment of Lender or holder of the certificate of purchase;
101      (f)    all other costs and expenses allowable by the evidence of debt or this Deed of Trust; and
102      (g)    such other costs and expenses which may be authorized by a court of competent jurisdiction.
103    Borrower hereby assigns to Lender any right Borrower may have by reason of any prior encumbrance on the Property or by
104 law or otherwise to cure any default under said prior encumbrance.
105    Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness
106 of Borrower secured by this Deed of Trust. Such amounts shall be payable upon notice from Lender to Borrower requesting
107 payment thereof, and Lender may bring suit to collect any amounts so disbursed plus interest specified in paragraph 2B (Note; Other
108 Obligations Secured). Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.
109    10.    **Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property,
110 provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to
111 Lender's interest in the Property.
112    11.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any
113 condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and
114 shall be paid to Lender as herein provided. However, all of the rights of Borrower and Lender hereunder with respect to such
115 proceeds are subject to the rights of any holder of a prior deed of trust.
116    In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with
117 the excess, if any, paid to Borrower. In the event of a partial taking of the Property, the proceeds remaining after taking out any part
118 of the award due any prior lien holder (net award) shall be divided between Lender and Borrower, in the same ratio as the amount of
119 the sums secured by this Deed of Trust immediately prior to the date of taking, bears to Borrower's equity in the Property
120 immediately prior to the date of taking. Borrower's equity in the Property means the fair market value of the Property less the
121 amount of sums secured by both this Deed of Trust and all prior liens (except taxes) that are to receive any of the award, all at the
122 value immediately prior to the date of taking.

If the Property is abandoned by Borrower or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is given, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Any such application of proceeds to principal shall not extend or postpone the due date of the installments referred to in paragraphs 4 (Payment of Principal and Interest) and 23 (Escrow Funds for Taxes and Insurance) nor change the amount of such installments.

12. **Borrower not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower, nor Borrower's successors in interest, from the original terms of this Deed of Trust. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower nor Borrower's successors in interest.

13. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by law, shall not be a waiver or preclude the exercise of any such right or remedy.

14. **Remedies Cumulative.** Each remedy provided in the Note and this Deed of Trust is distinct from and cumulative to all other rights or remedies under the Note and this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

15. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 24 (Transfer of the Property; Assumption). All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs in this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

16. **Notice.** Except for any notice required by law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be in writing and shall be effective upon (1) delivery to Borrower or (2) mailing such notice by first class U.S. mail, addressed to Borrower at Borrower's address stated herein or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be in writing and shall be given and be effective upon (1) delivery to Lender or (2) mailing such notice by first class U.S. mail, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in any manner designated herein.

17. **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the law of Colorado. In the event that any provision or clause of this Deed of Trust or the Note conflicts with the law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and Note are declared to be severable.

18. **Acceleration; Foreclosure; Other Remedies.** Except as provided in paragraph 24 (Transfer of the Property; Assumption), upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, or upon any default in a prior lien upon the Property, (unless Borrower has exercised Borrower's rights under paragraph 6 above), at Lender's option, all of the sums secured by this Deed of Trust shall be immediately due and payable (Acceleration). To exercise this option, Lender may invoke the power of sale and any other remedies permitted by law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this Deed of Trust, including, but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of such election. Trustee shall give such notice to Borrower of Borrower's rights as is provided by law. Trustee shall record a copy of such notice as required by law. Trustee shall advertise the time and place of the sale of the Property, for not less than four weeks in a newspaper of general circulation in each county in which the Property is situated, and shall mail copies of such notice of sale to Borrower and other persons as prescribed by law. After the lapse of such time as may be required by law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place (which may be on the Property or any part thereof as permitted by law) in one or more parcels as Trustee may think best and in such order as Trustee may determine. Lender or Lender's designee may purchase the Property at any sale. It shall not be obligatory upon the purchaser at any such sale to see to the application of the purchase money.

Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's fees and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

19. **Borrower's Right to Cure Default.** Whenever foreclosure is commenced for nonpayment of any sums due hereunder, the owners of the Property or parties liable hereon shall be entitled to cure said defaults by paying all delinquent principal and interest payments due as of the date of cure, costs, expenses, late charges, attorney's fees and other fees all in the manner provided by law. Upon such payment, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as though no Acceleration had occurred, and the foreclosure proceedings shall be discontinued.

20. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property; however, Borrower shall, prior to Acceleration under paragraph 18

(Acceleration; Foreclosure; Other Remedies) or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Lender or the holder of the Trustee's certificate of purchase shall be entitled to a receiver for the Property after Acceleration under paragraph 18 (Acceleration; Foreclosure; Other Remedies), and shall also be so entitled during the time covered by foreclosure proceedings and the period of redemption, if any; and shall be entitled thereto as a matter of right without regard to the solvency or insolvency of Borrower or of the then owner of the Property, and without regard to the value thereof. Such receiver may be appointed by any Court of competent jurisdiction upon ex parte application and without notice, notice being hereby expressly waived.

Upon Acceleration under paragraph 18 (Acceleration; Foreclosure; Other Remedies) or abandonment of the Property, Lender, in person, by agent or by judicially-appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied, first to payment of the costs of preservation and management of the Property, second to payments due upon prior liens, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

21.   Release:   Upon payment of all sums secured by this Deed of Trust, Lender shall cause Trustee to release this Deed of Trust and shall produce for Trustee the Note. Borrower shall pay all costs of recordation and shall pay the statutory Trustee's fees. If Lender shall not produce the Note as aforesaid, then Lender upon notice in accordance with paragraph 16 (Notice) from Borrower to Lender, shall obtain, at Lender's expense, and file any lost instrument bond required by Trustee or pay the cost thereof to effect the release of this Deed of Trust.

22.   Waiver of Exemptions.   Borrower hereby waives all right of homestead and any other exemption in the Property under state or federal law presently existing or hereafter enacted.

23.   Escrow Funds for Taxes and Insurance.   This paragraph 23 is not applicable, if Funds, as defined below, are being paid pursuant to a prior encumbrance. Subject to applicable law, Borrower shall pay to Lender, on each day installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein referred to as "Funds") equal to _____ of the yearly taxes and assessments which may attain priority over this Deed of Trust, plus _____, of yearly premium installments for Property Insurance, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof, taking into account any excess Funds not used or shortages.

The principal of the Funds shall be held in a separate account by Lender in trust for the benefit of Borrower and deposited in an institution, the deposits or accounts of which are insured or guaranteed by a federal or state agency. Lender shall apply the Funds to pay said taxes, assessments and insurance premiums. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills. Lender shall not be required to pay. Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments and insurance premiums as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is given in accordance with paragraph 16 (Notice) by Lender to Borrower requesting payment thereof. Provided however, if the loan secured by this Deed of Trust is subject to RESPA or other laws regulating Escrow Accounts, such deficiency, surplus or any other required adjustment shall be paid, credited or adjusted in compliance with such applicable laws.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall simultaneously refund to Borrower any Funds held by Lender. If under paragraph 18 (Acceleration; Foreclosure; Other Remedies) the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, whichever occurs first, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

24.   Transfer of the Property; Assumption.   The following events shall be referred to herein as a "Transfer": (i) a transfer or conveyance of title (or any portion thereof, legal or equitable) of the Property (or any part thereof or interest therein), (ii) the execution of a contract or agreement creating a right to title (or any portion thereof, legal or equitable) in the Property (or any part thereof or interest therein), (iii) or an agreement granting a possessory right in the Property (or any portion thereof), in excess of 3 years; (iv) a sale or transfer of, or the execution of a contract or agreement creating a right to acquire or receive, more than fifty percent (50%) of the controlling interest or more than fifty percent (50%) of the beneficial interest in Borrower, (v) the reorganization, liquidation or dissolution of Borrower. Not to be included as a Transfer are (i) the creation of a lien or encumbrance subordinate to this Deed of Trust, (ii) the creation of a purchase money security interest for household appliances, or (iii) a transfer by devise, descent or by operation of the law upon the death of a joint tenant. At the election of Lender, in the event of each and every Transfer:

(a)   All sums secured by this Deed of Trust shall become immediately due and payable (Acceleration).

(b)   If a Transfer occurs and should Lender not exercise Lender's option pursuant to this paragraph 24 to Accelerate, Transferee shall be deemed to have assumed all of the obligations of Borrower under this Deed of Trust including all sums secured hereby whether or not the instrument evidencing such conveyance, contract or grant expressly so provides. This covenant shall run with the Property and remain in full force and effect until said sums are paid in full. Lender may without notice to Borrower deal with Transferee in the same manner as with Borrower with reference to said sums including the payment or credit to Transferee of

undisbursed reserve Funds on payment in full of said sums, without in any way altering or discharging Borrower's liability hereunder for the obligations hereby secured.

(c)     Should Lender not elect to Accelerate upon the occurrence of such Transfer then, subject to (b) above, the mere fact of a lapse of time or the acceptance of payment subsequent to any of such events, whether or not Lender had actual or constructive notice of such Transfer, shall not be deemed a waiver of Lender's right to make such election nor shall Lender be estopped therefrom by virtue thereof.  The issuance on behalf of Lender of a routine statement showing the status of the loan, whether or not Lender had actual or constructive notice of such Transfer, shall not be a waiver or estoppel of Lender's said rights.

25.     Borrower's Copy.  Borrower acknowledges receipt of a copy of the Note and this Deed of Trust.

26.     Notwithstanding any previous provisions the principal and interest on the $39,000.00 promissory note (second note) regarding the Chiropractic Defendants shall be payable as follows: monthly installments of FIVE THOUSAND DOLLARS ($5000.00) shall be paid on the first day of each calendar month commencing the month immediately following final payment and satisfaction of that certain Promissory Note from Makers to Payee of this date in the amount of $640,000.00 (the "First Note"), until all principal and accrued interest is paid in full. A default in payment of the First Note shall be a default under this Note.

<div align="center">EXECUTED BY BORROWER.</div>

IF BORROWER IS NATURAL PERSON(s):

_____

_____

_____ doing business as _____

IF BORROWER IS CORPORATION:

ATTEST:                                          *R3 Holding1*
                                                 _____
                                                 Name of Corporation

                                                 By *CRN CROMEN*
_____                          _____
          Secretary                                              President

(SEAL)

IF BORROWER IS PARTNERSHIP:

                                                 R3 HOLDINGS, LLC
                                                 _____
                                                 Name of Partnership

                                                 By *Jeff DeBacco*
                                                      _____
                                                              A General Partner.

STATE OF COLORADO          }
                           } ss.
_____ COUNTY OF *La Plata* }

The foregoing instrument was acknowledged before me this *28th* day of *July*, 20 *08* by*

*Jeff DeBacco*

Witness my hand and official seal.
My commission expires: *01-19-2009*

                                                 *Jennifer Grippo*
                                                 _____
                                                 Notary Public
                                                 *7090 Main Ave Durango Co*
                                                 _____   *81301*
                                                              Address

MY COMMISSION EXPIRES 04/18/2009

*If a natural person or persons, insert the name(s) of such person(s).  If a corporation, insert, for example, "John Doe as President and Jane Doe as Secretary of Doe & Co., a Colorado corporation."  If a partnership, insert, for example, "Sam Smith as general partner in and for Smith & Smith, a general partnership."